# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MICHELE M. MOLINA,

Plaintiff,

v.

GLENN LATRONICO, Illinois State Trooper, Star No. 6589; and ERIC DAVID, Illinois State Trooper, Star No. 6329,

Defendants.

No.    1:18-cv-6632

**PLAINTIFF DEMANDS TRIAL BY JURY**

## SECOND AMENDED COMPLAINT AT LAW

Plaintiff, MICHELE M. MOLINA, by and through her attorneys, TOMASIK KOTIN KASSERMAN, LLC, complaining of Defendants, GLENN LATRONICO ("LATRONICO"), Illinois State Trooper, Star No. 6589; and ERIC DAVID ("DAVID"), Illinois State Trooper, Star No. 6329, states as follows:

## JURISDICTION AND VENUE

1.    This action is brought pursuant to the Fourth and Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1983, 1985 and 1988 of the Civil Rights Act, the United States Constitution, the Illinois Constitution, and the laws of the State of Illinois, to redress deprivations of the civil rights of Plaintiff by the acts or omissions of Defendants committed under color of law.

2.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.    Venue is proper in this Court as all acts complained of occurred in the City of Chicago, County of Cook, State of Illinois.

## PARTIES

4.      Plaintiff, MICHELE M. MOLINA is a resident of Chicago, Cook County, Illinois.

5.      Defendants, LATRONICO and DAVID are employees, agents and/or servants of the Illinois State Police.  At all times relevant hereto, Defendants LATRONICO and DAVID were duly appointed and acting as state troopers for the Illinois State Police, acting within the scope of authority and under the color of law, statutes, ordinances, regulations, policies, customs and usages of the State of Illinois and/or the Illinois State Police.

### I.    FACTUAL ALLEGATIONS: GLENN LATRONICO

6.      On and before August 2015, Plaintiff MOLINA was employed as a police officer for the City of Chicago.

7.       On and before August 2015, Plaintiff was off-duty and traveling home in her personal vehicle when she witnessed a motor vehicle accident on the Dan Ryan Expressway in Chicago, Illinois.

8.      Plaintiff immediately drove her vehicle to the shoulder and called 9-1-1.

9.      On and before August 2015, Illinois State Trooper LATRONICO responded to the scene and obtained Plaintiff's phone number under the guise of procuring witness testimony.

10.     On and after August 2015, LATRONICO and Plaintiff exchanged friendly text messages relating to work, pets and social interests.

11.     On and after August 2015, and over the course of several weeks, LATRONICO frequently complimented Plaintiff, asked her on dates, and text messaged Plaintiff unsolicited photographs of himself.

12.     On and after September 2015, LATRONICO text messaged Plaintiff and asked where she lived.

13.     Plaintiff refused to disclose her address or allow LATRONICO in her home.

14.     On and after November 2015, LATRONICO text messaged Plaintiff a picture of his completely nude and fully erect penis.

15.     At said time and place, LATRONICO was on duty, dressed in his Illinois State Police uniform and driving an Illinois State Police vehicle.

16.     At all times relevant, Plaintiff never text messaged or sent LATRONICO inappropriate photographs of herself.

17.     On or about that time, LATRONICO was married and had concealed said marital status from Plaintiff.  Plaintiff terminated all communication.

18.     At all times relevant, Plaintiff and LATRONICO never went on a date and never had intimate physical relations.

## II.     FACTUAL ALLEGATIONS: ERIC DAVID

19.     On and after January 2016, Plaintiff's vehicle was pulled over by Illinois State Trooper DAVID on the I-55 Stevenson Expressway in Chicago, Illinois.

20.     At said time and place, DAVID acted aggressively towards Plaintiff and demonstrated his intent to ticket and/or charge Plaintiff.

21.     At said time and place, Plaintiff asked for a professional courtesy and in support of her position, named the parties' mutual connection, LATRONICO.

22.     At said time and place, DAVID and LATRONICO spoke over the telephone, however, DAVID continued his investigation and refused to grant any such courtesy towards Plaintiff.

23.     At said time and place, the Chicago Police Department arrived on the scene and handled the matter, compelling DAVID to leave.

3

24.     At said time and place, Plaintiff did not receive any citation or charge.

25.     At said time and place, and after arriving home, Plaintiff and LATRONICO had a telephone conversation regarding DAVID'S demeanor during the traffic stop.

26.     This was the first time the parties had spoken since November 2015.

27.     At said time and place, Plaintiff expressed that DAVID'S aggression increased after speaking with LATRONICO and that LATRONICO made the situation worse.

28.     At said time and place, LATRONICO became offended and angrily and abruptly ended the conversation.

### III.     COMMON FACTS: LATRONICO AND DAVID

29.     On and after September 2016, LATRONICO texted Plaintiff out of the blue, asking to "sleep at her home as a personal favor."

30.     LATRONICO continued sending text messages to Plaintiff asking where she lived and if he could have her address.  Plaintiff refused each time.

31.     On or about that time, Plaintiff and LATRONICO had not spoken in over eight months.

32.     On or about that time, LATRONICO "friend requested" Plaintiff on a social media platform known as Snapchat[1].

33.     On or about that time, and over the course of three days, LATRONICO persistently text messaged Plaintiff asking to sleep at her home and demanded to know her address.

---

[1] Snapchat is a multimedia messaging application that connects users to each other through a mobile device's phonebook and through a contact search function within the application.  "Friends" can send multimedia messages that display for ten seconds or less until they permanently disappear.  Snapchat shows a specific user when a "friend" has opened, read or screenshot a message.  Users can also post a "story": a 24-hour video or photograph displayed on the main page of the application, which is accessible to every Snapchat "friend."  During the story's 24-hour time slot, Snapchat provides the publishing user with the names of every "friend" who has viewed the story and provides alerts when a "friend" screenshots the story posted.  All stories permanently disappear within 24-hours.  Snap Inc., *What is Snapchat?* https://www.snapchat.com/ (last visited Sept. 24, 2018).

34. Plaintiff refused to disclose her address or allow LATRONICO to visit her home.

35. On and after September 2016, LATRONICO messaged Plaintiff through Snapchat, sternly stating that he needed to sleep at Plaintiff's home as a personal favor.

36. At said time and place, Plaintiff again refused to give LATRONICO her address and asked, "did your mother drop you on your head?"

37. The Snapchat application alerted Plaintiff that LATRONICO read the message, but he never responded.

38. On or about September 30, 2016, Plaintiff went to Blue Light Chicago located at 3251 North Western Ave in Chicago, Illinois.

39. At said time and place, Plaintiff took a photograph of the facility's illuminated sign and published said picture to her Snapchat "story."

40. Within one-hour of posting said picture, LATRONICO viewed and screenshot the Plaintiff's photograph. Plaintiff was not aware that LATRONICO screenshot her picture until at least 12-hours later.

41. The photograph screenshot by LATRONICO revealed Plaintiff's location.

42. On information and belief, LATRONICO sent Plaintiff's location to DAVID.

43. On or about that time, and on information and belief, DAVID drove to Plaintiff's location and waited for her at or near her destination.

44. Upon leaving her destination, the Plaintiff drove her vehicle behind her boyfriend's vehicle northbound on Western Avenue toward Addison Street in Chicago, Illinois.

45. At said time and place, Defendant DAVID pulled Plaintiff's vehicle over at or near 2500 West Addison Street in Chicago, Illinois.

46.     At said time and place, DAVID stated that he pulled the Plaintiff's vehicle over for a minor traffic violation.

47.     At said time and place, DAVID immediately said "you look really familiar, I don't know why."

48.     Plaintiff responded by saying that she worked for the Chicago Police Department, but that she did not recognize DAVID.

49.     At said time and place, Plaintiff's boyfriend pulled his vehicle over to the side of the road and approached Plaintiff's vehicle. He also told DAVID that they were employees of the Chicago Police Department.

50.     DAVID instructed Plaintiff's boyfriend to return to his vehicle and that he had not done anything wrong.

51.     However, DAVID later accused Plaintiff's boyfriend of committing a similar traffic violation. Despite Plaintiff's boyfriend remaining on scene throughout the traffic stop, DAVID never ticketed nor investigated him.

52.     At said time and place, DAVID continued to shoo Plaintiff's boyfriend away.

53.     Once DAVID and the Plaintiff were alone, DAVID said "I feel like I have seen you once or twice."

54.     Throughout the night, DAVID told Plaintiff multiple times that he recognized her and asked questions concerning her romantic relationship.

55.     Although Plaintiff did not recognize DAVID, she responded that she had previously known an Illinois State Trooper, Glenn Latronico.

56.     In response, DAVID said "Latronico? That's my boy."

6

57.     DAVID casually talked with Plaintiff about her work, dating life, Latronico and the traffic stop for over twenty minutes.

58.     At said time and place, DAVID sent and received several text and Snapchat messages.

59.     On information and belief, these messages were between DAVID and LATRONICO.

60.     On information and belief, DAVID and LATRONICO entered into an agreement to detain and arrest Plaintiff.

61.     On information and belief, DAVID and LATRONICO communicated about the Plaintiff throughout the occurrence to detain and arrest Plaintiff.

62.     At said time and place, DAVID had knowledge of LATRONICO's hostility towards Plaintiff.

63.     At said time and place, DAVID stated that Plaintiff was not so nice to his boy LATRONICO.

64.     On information and belief, DAVID and LATRONICO jointly decided that DAVID should accuse Plaintiff of committing certain traffic violations.

65.     On information and belief, DAVID and LATRONICO jointly determined the violations that DAVID eventually accused Plaintiff of committing.

66.     On information and belief, DAVID and LATRONICO jointly decided that DAVID should conduct a field sobriety test.

67.     On information and belief, DAVID and LATRONICO jointly decided that DAVID should hold Plaintiff in the Illinois State Trooper vehicle without placing her under arrest.

68. At said time and place, DAVID conducted a field sobriety test on Plaintiff in the right-hand lane of Addison Street.

69. At said time and place, Plaintiff complied with all requests.

70. At said time and place, additional Illinois State Troopers arrived at the scene to manage the traffic stop during which DAVID signaled them to be quiet and said, "I don't interfere with your stops, don't interfere with mine."

71. At said time and place, at least one trooper remained on the scene.

72. At said time and place, DAVID said "we just got confirmation from her that we stopped her a while ago on a very similar situation."

73. On information and belief, DAVID knew that he had pulled the Plaintiff's vehicle over the previous year.

74. At no point did Plaintiff confirm to DAVID that he had pulled her vehicle over.

75. At said time and place, DAVID said that the last stop had not gone well.

76. DAVID then told the Plaintiff that the only reason that he was conducting the field sobriety test was because of the traffic stop the year before.

77. DAVID told Plaintiff that he had let her go last time and that this time he wanted to make sure.

78. At said time and place, DAVID handcuffed Plaintiff and placed her in the back of his police car to "let [her] think about blowing into the mobile breathalyzer."

79. After Plaintiff communicated that she did not want to blow into the breathalyzer, DAVID said that "we're not writing any of this stuff down because we're doing an arrest, right now we're just talking."

8

80.     At said time and place, DAVID said that "right now, we're just trying to make a decision."

81.     During that time, DAVID's phone was audibly vibrating from incoming text messages.

82.     On information and belief, these text messages were from LATRONICO, who helped DAVID make his "decision" on what to do with Plaintiff.

83.     At said time and place, DAVID confined Plaintiff in the backseat of the Illinois State Troop vehicle and she could not leave.

84.     At said time and place, Plaintiff's boyfriend and DAVID spoke about the "last time" and DAVID said "it's not that she pissed me off. It's that it was completely unacceptable behavior."

85.     At all times relevant, DAVID repeatedly told Plaintiff and her boyfriend that he was only conducting a field sobriety test because of an unrelated encounter with Plaintiff one year before.

86.     At said time and place, DAVID repeatedly exerted pressure on Plaintiff for over an hour to blow into the mobile breathalyzer test.

87.     DAVID's pressure tactics involved a promise to Plaintiff that he was "not trying to jam her up" and that she "could go home if the mobile breathalyzer revealed a blood alcohol content number in the low-teens."

88.     At said time and place, DAVID repeatedly referenced the previous encounter with Plaintiff to justify blowing into the mobile breathalyzer.

89.     At said time and place, Plaintiff did not show any signs of alcohol consumption.

9

90.     After an hour of DAVID'S pressure tactics and promises, Plaintiff believed DAVID to be sincere and blew into the mobile breathalyzer.

91.     At said time and place, DAVID placed the Plaintiff under arrest.

92.     At no point in time did DAVID read Plaintiff her MIRANDA warnings.

93.     At all times relevant, Plaintiff was not free to leave.

94.     On or about that time, DAVID drove Plaintiff to the First District Chicago Police Station located at 1718 South State Street in Chicago, Illinois.

95.     At said time and place, DAVID exited the car, locked the doors, and left Plaintiff handcuffed in the police car.

96.     At said time and place, Plaintiff could not exit the vehicle.

97.     DAVID left Plaintiff in the police station parking lot for over 30 minutes.

98.     DAVID never retrieved Plaintiff from the police car.

99.     DAVID then returned and told Plaintiff that he was taking her somewhere else.

100.    At said time and place, Plaintiff was not processed, booked or charged at the First District of the Chicago Police Department.

101.    At said time and place, DAVID then disabled the dashcam inside of the Illinois State Police vehicle in violation of 20 ILCS 2610, *et seq.*

102.    At all times relevant, DAVID never turned the dashcam back on.

103.    DAVID then decided to take Plaintiff to the 16th District of the Chicago Police Department located at 5151 North Milwaukee Avenue in Chicago, Illinois.

104.    At said time and place, DAVID and LATRONICO continued to text message and call each other.

105. At said time and place, and while driving down side streets, DAVID told Plaintiff that he was going to play her "greatest hits."

106. At said time and place, DAVID produced a laptop and played dashcam footage that he had saved from his initial encounter with Plaintiff on January 2016, in violation of 20 ILCS 2610, *et seq.*

107. At said time and place, Plaintiff tearfully begged DAVID to turn the footage off.

108. DAVID laughed, made demeaning remarks, and continued to let the dashcam footage play while driving the Illinois State Police car.

109. At all times relevant, Plaintiff experienced anguish, humiliation, distress, fear and anxiety.

110. At said time and place, and while DAVID played the dashcam footage, DAVID and LATRONICO were communicating with each other.

111. During said conversation, DAVID told LATRONICO that "he had [Plaintiff] in his custody, she's being real nice now, she's even crying back there, and she's not so uppity."

112. After said conversation, DAVID commented that Plaintiff was "not so nice to his boy LATRONICO, he needed a favor" and asked why "she wouldn't help him out."

113. At all times relevant, DAVID and LATRONICO intentionally communicated in front of Plaintiff while she displayed signs of distress.

114. At all times relevant, DAVID and LATRONICO jointly taunted, harassed and humiliated Plaintiff as DAVID snickered, laughed, and made demeaning remarks.

115. At said time and place, and upon arriving at the 16th District of the Chicago Police Department, DAVID again exited his police car, locked the doors, and trapped Plaintiff in the backseat for over 20 minutes.

116.  DAVID then returned to his police car, unhandcuffed Plaintiff and told her that it was her "lucky day," he was "not booking or charging [Plaintiff]."

117.  At said time and place, DAVID removed Plaintiff from the backseat and unhandcuffed her.

118.  After Plaintiff got out of the vehicle, she asked to call either her boyfriend or an Uber to transport her to her boyfriend's home.

119.  At said time and place, DAVID refused to let Plaintiff out of his custody and insisted that that he drive her.

120.  At said time and place, Plaintiff did not want to be near DAVID or disclose her boyfriend's address.

121.  At said time and place, DAVID ordered Plaintiff back into his police car so that he could drive her.

122.  At said time and place, DAVID did not place Plaintiff under arrest or handcuff her.

123.  Plaintiff felt intimidated and scared after spending several hours in DAVID'S custody and complied.

124.  At said time and place, Plaintiff was not free to leave.

125.  At said time and place, DAVID demanded the address and phone number of Plaintiff's boyfriend, stating "I need your boyfriend's permission in order to drop you off."

126.  Plaintiff felt apprehensive and recited an incorrect phone number.

127.  At said time and place, DAVID became extremely agitated and said, "I will not drop you off unless I speak with your boyfriend on the phone."

128.  At said time and place, DAVID would not release Plaintiff.

129. At said time and place, Plaintiff wanted to be released from DAVID'S custody and complied.

130. At said time and place, DAVID immediately called Plaintiff's boyfriend and asked, "do you want her?" and said, "I will drop her off in a few minutes."

131. On or about that time, DAVID suddenly drove his police car into a convenience store parking lot two blocks away from Plaintiff's destination.

132. Plaintiff asked DAVID to release her from the back of the vehicle so that she could walk home.

133. At said time and place, DAVID completely ignored her and began text messaging, snickering, and laughing.

134. DAVID then exited his police vehicle, immediately locked the doors, leaving Plaintiff trapped in the backseat.

135. At said time and place, Plaintiff could not exit the vehicle.

136. At all times relevant, Plaintiff was held against her will.

137. At said time and place, Plaintiff observed DAVID place a phone call while standing within a few feet of the police car.

138. At all times relevant, DAVID refused to release Plaintiff from his custody.

139. DAVID then returned to his police car and told Plaintiff that "the plans changed, I'm taking you back to the 16th District of the Chicago Police Department."

140. At said time and place, DAVID did not handcuff Plaintiff.

141. At said time and place, DAVID did not tell Plaintiff that she was under arrest.

142. At said time and place, Plaintiff communicated to DAVID that she wished to be released.

13

143.    At said time and place, DAVID refused to release Plaintiff.

144.    At said time and place, DAVID did not read Plaintiff any MIRANDA warnings.

145.    At said time and place, and at all times relevant, DAVID detained Plaintiff for over six hours, against her will.

146.    At all times relevant, DAVID explicitly based his probable cause on his encounter with Plaintiff the previous year.

147.    At said time and place, and at all times relevant, DAVID had no probable cause or justification to seize the person of Plaintiff.

148.    Upon arriving at the 16th District of the Chicago Police Department, DAVID removed Plaintiff from the backseat and stated that he was arresting her for driving under the influence of alcohol.

149.    At said time and place, DAVID again placed handcuffs on Plaintiff.

150.    At all times during the events described above, DAVID and LATRONICO were engaged in a joint venture. The Defendants assisted each other in performing the various actions described and lent their support and the authority of their office to each other during said events.

151.    As a direct and proximate cause of this conspiracy and the actions of Defendants DAVID and LATRONICO, the Plaintiff was incarcerated and wrongfully charged with driving under the influence of alcohol.

152.    On or about March 30, 2017, the Cook County State's Attorney's Office dismissed the charges for driving under the influence of alcohol against Plaintiff, after several months pending in court.

153.    As a direct and proximate cause of this conspiracy and the actions of Defendants DAVID and LATRONICO, Plaintiff suffered economic and non-economic harm, e.g., loss of

14

physical liberty, pain and suffering, emotional trauma, economic losses resulting from court costs, litigation fees, lost wages and income, treatment fees, and a tarnished reputation at work and in the community.

## COUNT I
## DAVID and LATRONICO
### 42 U.S.C. § 1983 – Fourth Amendment – Unlawful Seizure

154.    Each of the Paragraphs of this Complaint are incorporated herein.

155.    In the manner described above, DAVID and LATRONICO, acting jointly, unlawfully seized Plaintiff's person without justification and without probable cause.

156.    In the manner described above, there existed an agreement between DAVID and LATRONICO to deprive Plaintiff of her constitutional rights.

157.    The Defendants acted under the color of law and violated clearly established and well settled federal constitutional rights belonging to Plaintiff, including the unreasonable seizure of her person.

158.    The conduct of DAVID and LATRONICO was undertaken with malice, willfulness, and reckless indifference to the rights of others.

159.    As a direct and proximate cause of this unreasonable and illegal seizure, Plaintiff has suffered and continues to suffer injuries.

160.    The misconduct described herein was undertaken by Defendant DAVID, acting under the color of law in his individual capacity and as an Illinois State Police Officer, and by Defendant LATRONICO, acting under the color of law in his individual capacity.

WHEREFORE, Plaintiff MOLINA respectfully requests that this Court enter judgment against Defendants DAVID and LATRONICO, individually, for compensatory damages, pre-

judgment interest, and punitive damages, plus costs and reasonable attorney's fees, as well as any other relief deemed just and proper by this Court.

## COUNT II
## DAVID and LATRONICO
## State Law Claim: Civil Conspiracy

161.    Each of the Paragraphs of this Complaint are incorporated herein.

162.    In the manner described above, the Defendants acted jointly and in agreement to conspire against Plaintiff and deprive her of her civil rights.

163.    In furtherance of this conspiracy, DAVID and LATRONICO took overt actions to find and arrest Plaintiff on September 30, 2016 by investigating and screenshotting Plaintiff's location on Snapchat, staying in constant communication, taunting Plaintiff, fabricating false police reports, and falsely charging Plaintiff.

164.    In furtherance of this conspiracy, DAVID and LATRONICO took overt acts in interfering with the video recording of this ongoing misconduct in an effort to unlawfully convict Plaintiff of an offense, all in violation of both state and federal law.

165.    Defendants DAVID and LATRONICO, acting under the color of law, violated clearly established and well settled federal constitutional rights belonging to Plaintiff.

166.    The conduct of DAVID and LATRONICO was undertaken with malice, willfulness, and reckless indifference to the rights of others, e.g., LATRONICO displayed anger when Plaintiff denied his requests; LATRONICO displayed anger after he text messaged Plaintiff a picture of his fully nude and erect penis; DAVID repeatedly taunted, jeered, and humiliated Plaintiff when he communicated with LATRONICO; DAVID played illegally stored dashcam footage of what he described as Plaintiff's "greatest hits"; DAVID mocked her while she wept in

his back seat; DAVID and LATRONICO loudly mocked and humiliated her during their phone conversations; and DAVID locked her in his police vehicle for over six hours.

167. As a direct and proximate cause of the Defendants' conspiracy, Plaintiff has suffered and continues to suffer injuries.

168. The misconduct described herein was undertaken by Defendant DAVID, acting under the color of law in his individual capacity and as an Illinois State Police Officer, and by Defendant LATRONICO, acting under the color of law in his individual capacity.

WHEREFORE, Plaintiff MOLINA respectfully requests that this Court enter judgment against Defendants DAVID and LATRONICO, individually, for compensatory damages, pre-judgment interest, and punitive damages, plus costs and reasonable attorney's fees, as well as any other relief deemed just and proper by this Court.

**COUNT III**
**DAVID and LATRONICO**
**State Law Claim: Malicious Prosecution**

169. Each of the Paragraphs of this Complaint are incorporated herein.

170. In the manner described above, DAVID and LATRONICO caused Plaintiff to be subjected to judicial proceedings for which there was no probable cause.

171. Defendants DAVID and LATRONICO, acting under the color of law, violated clearly established and well settled federal constitutional rights belonging to Plaintiff, including maliciously prosecuting her for said charges.

172. Defendants charged Plaintiff with driving under the influence of alcohol and other minor traffic offenses.

17

173.    As part of this course of conduct, and as set forth above, Defendants made written and other statements with the intent of exerting influence to institute and continue judicial proceedings.

174.    These judicial proceedings were instituted and continued maliciously, resulting in injury to Plaintiff.

175.    As a result of the judicial proceedings, Plaintiff was suspended from her job at the Chicago Police Department.

176.    The proceedings brought by DAVID and LATRONICO against Plaintiff were ultimately terminated in Plaintiff's favor.

177.    The conduct of DAVID and LATRONICO was undertaken with malice, willfulness, and reckless indifference to the rights of others.

178.    As a result of the Defendant's misconduct, Plaintiff was caused to expend money defending on these proceedings and on a treatment program.

179.    Plaintiff suffered lost wages and income as a result of said charges.

180.    Plaintiff suffered emotional distress, mental injuries, pain and suffering, and anguish as a result of said charges.

181.    As a direct and proximate result of this malicious prosecution, Plaintiff has suffered and continues to suffer injuries.

182.    The misconduct described herein was undertaken by Defendant DAVID, acting under the color of law in his individual capacity and as an Illinois State Police Officer, and by Defendant LATRONICO, acting under the color of law in his individual capacity.

WHEREFORE, Plaintiff MOLINA respectfully requests that this Court enter judgment against Defendants DAVID and LATRONICO, individually, for compensatory damages, pre-

judgment interest, and punitive damages, plus costs and reasonable attorney's fees, as well as any other relief deemed just and proper by this Court.

## COUNT IV
## DAVID and LATRONICO
### State Law Claim: Intentional Infliction of Emotional Distress

183. Each of the Paragraphs in this Complaint are incorporated herein.

184. The behavior of Defendants DAVID and LATRONICO described herein constitutes extreme and outrageous conduct.

185. The conduct of DAVID and LATRONICO was undertaken with malice, willfulness, and reckless indifference to the rights of others.

186. At all times detailed in the Complaint when Illinois State Police troopers DAVID and LATRONICO engaged in this extreme and outrageous conduct, both parties knew that Plaintiff was innocent and had not committed any offense.

187. In engaging in this extreme and outrageous conduct, Defendants DAVID and LATRONICO either intended to inflict severe emotional distress upon Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress upon Plaintiff.

188. As a direct and proximate result of Defendants extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress and continues to suffer such severe extreme emotional distress, including suffering from emotional distress, anxiety and interference with certain basic life functions including paranoia and anxiety that Defendants DAVID and LATRONICO will repeat the conduct described in this Complaint.

189. The misconduct described herein was undertaken by Defendant DAVID, acting under the color of law in his individual capacity and as an Illinois State Police Officer, and by Defendant LATRONICO, acting under the color of law in his individual capacity.

WHEREFORE, Plaintiff MOLINA respectfully requests that this Court enter judgment against Defendants DAVID and LATRONICO, individually, for compensatory damages, pre-judgment interest, and punitive damages, plus costs and reasonable attorney's fees, as well as any other relief deemed just and proper by this Court.

Respectfully submitted,

/s/ James P. McKay, Jr.
James P. McKay, Jr.
One of the Attorneys for Plaintiff

James P. McKay, Jr.
Of Counsel
Tomasik Kotin Kasserman, LLC
161 North Clark Street, Suite 3050
Chicago, Illinois 60601
(312) 605-8800
(312) 605-8808 (fax)
jim@tkklaw.com
Firm I.D. No. 56323

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of March 2020, I served the foregoing *Plaintiff's Second Amended Complaint* with the Clerk of the Court using the ECF system which will send notification of such filing to the following individual(s):

**<u>Attorney for Eric David</u>**
Mary A. Johnston
Office of the Attorney General
100 W. Randolph St.
13th Floor
Chicago, Illinois 60601
(312) 814-3739
mjohnston@atg.state.il.us

**<u>Attorney for Glenn Latronico</u>**
Jason A, Kanter
Office of the Illinois Attorney General
100 W. Randolph St.
13th Floor
Chicago, Illinois 60601
(312) 814-5022
jkanter@atg.state.il.us

/s/ James P. McKay, Jr.
James P. McKay, Jr.

21